**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

JULIETTE MOTZ, individually and as a
representative of a class of similarly situated
persons,

                          Plaintiff,

            vs.

CITIGROUP INC.,

                          Defendant.

Case No. 3:22-cv-00965 (RNC)

March 1, 2024

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITIGROUP INC.'S**

**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND AND ALLEGATIONS ....................................................... 4

    A.    The Plan ............................................................................................... 4

    B.    Target Date Funds............................................................................... 5

    C.    Plaintiff's Claims ............................................................................... 8

LEGAL STANDARD........................................................................................................ 10

ARGUMENT .................................................................................................................... 11

    I.    The Amended Complaint Fails To Plausibly Allege A Breach Of
Fiduciary Duty ................................................................................... 11

        A.    Plaintiff's Claims Rest Entirely On The Performance Of The
BlackRock TDFs, Which Does Not State A Claim Under ERISA.......... 12

        B.    The Amended Complaint Does Not Plausibly Allege
Underperformance Relative To A Meaningful Benchmark..................... 15

            1.    The Alternative TDFs Have Different Glide Path Strategies
And Asset Allocations From The BlackRock TDFs.................... 16

            2.    Target Date Funds That Rely On Active Management Are
Not Apt Comparators For The Index-Fund-Based
BlackRock TDFs........................................................................ 21

            3.    The S&P Target Date Indices Are Not A Meaningful
Benchmark ................................................................................ 23

            4.    Sharpe Ratio Comparisons Across Funds With Distinct
Strategies Are Not A Substitute For A Meaningful
Benchmark ................................................................................ 25

        C.    Plaintiff's Allegations Of "Underperformance" Fail On Their Own
Terms .................................................................................................. 26

        D.    Plaintiff Cannot Save Her Claim By Misrepresenting The
Requirements Of The Plan's IPS ........................................................ 32

        E.    The Amended Complaint Does Not Plead A Claim For Breach Of
The Duty Of Loyalty Or Duty To Follow Plan Documents ................... 35

    II.    Plaintiff's Claims For Failure To Monitor Fiduciary Appointees And Co-
Fiduciary Liability Also Fail............................................................... 37

    III.    The Amended Complaint Does Not State A Claim For Knowing Breach
Of Trust.............................................................................................. 38

    IV.    Plaintiff Lacks Article III Standing To Assert Claims Regarding Any Plan
Investment Option Other Than The BlackRock 2045 Fund ................... 39

CONCLUSION.................................................................................................................. 40

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abel v. CMFG Life Ins. Co.*,
   2024 WL 307489 (W.D. Wis. Jan. 26, 2024) ................................................................ passim

*Abuhamdan v. Blyth, Inc.*,
   9 F. Supp. 3d 175 (D. Conn. 2014) ......................................................................... 11

*Albert v. Oshkosh Corp.*,
   47 F.4th 570 (7th Cir. 2022) ............................................................................... 15

*Anderson v. Advance Publ'ns, Inc.*,
   2023 WL 3976411 (S.D.N.Y. June 13, 2023) ................................................................ passim

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
   579 F. Supp. 3d 1133 (N.D. Cal. 2022) ...................................................................... 24

*Anderson v. Intel Corp.*,
   2021 WL 229235 (N.D. Cal. Jan. 21, 2021) .......................................................... 6, 19, 26

*Antoine v. Marsh & McLennan Cos., Inc.*,
   2023 WL 6386005 (S.D.N.Y. Sept. 30, 2023) ............................................................. passim

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*,
   475 F. Supp. 3d 910 (E.D. Wis. 2020) ...................................................................... 36

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 10, 38

*Barchock v. CVS Health Corp.*,
   2017 WL 9324762 (D.R.I. Jan. 31, 2017) .................................................................... 19

*Barchock v. CVS Health Corp.*,
   886 F.3d 43 (1st Cir. 2018) ............................................................................. 18, 23

*Beldock v. Microsoft Corp.*,
   2023 WL 1798171 (W.D. Wash. Feb. 7, 2023) ........................................................ 1, 7, 21, 39

*Beldock v. Microsoft Corp.*,
   2023 WL 3058016 (W.D. Wash. Apr. 24, 2023) ......................................................... 2, 13, 15

*Boyette v. Montefiore Med. Ctr.*,
   2023 WL 7612391 (S.D.N.Y. Nov. 13, 2023) .................................................................. 13

*Bracalente v. Cisco Sys., Inc.*,
   2023 WL 5184138 (N.D. Cal. Aug. 11, 2023) ............................................................... passim

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) .......................................................................... 11

*Cho v. Prudential Ins. Co. of Am.*,
  2021 WL 4438186 (D.N.J. Sept. 27, 2021) .............................................. 29, 31, 38

*Collier v. Aksys Ltd.*,
  2005 WL 1949868 (D. Conn. Aug. 15, 2005) ................................................ 11

*Controlled Air, Inc. v. Barr*,
  2020 WL 979874 (D. Conn. Feb. 28, 2020) .................................................... 5

*Coyer v. Univar Sols. USA Inc.*,
  2022 WL 4534791 (N.D. Ill. Sept. 28, 2022) .......................................... 23, 38, 39

*Davis v. FEC*,
  554 U.S. 724 (2008) ...................................................................................... 39

*Davis v. Salesforce.com, Inc.*,
  2020 WL 5893405 (N.D. Cal. Oct. 5, 2020) .................................................. 31

*Davis v. Salesforce.com, Inc.*,
  2021 WL 1428259 (N.D. Cal. Apr. 15, 2021) ............................................... 23

*Davis v. Wash. Univ. in St. Louis*,
  960 F.3d 478 (8th Cir. 2020) ................................................................... passim

*DeBruyne v. Equitable Life Assurance Soc'y*,
  920 F.2d 457 (7th Cir. 1990) ...................................................................... 19

*DiFelice v. U.S. Airways, Inc.*,
  497 F.3d 410 (4th Cir. 2007) ...................................................................... 12

*Dorman v. Charles Schwab Corp.*,
  2019 WL 580785 (N.D. Cal. Feb. 8, 2019) .................................................. 26

*Falberg v. Goldman Sachs Grp. Inc.*,
  2024 WL 619297 (2d Cir. Feb. 14, 2024) .................................................... 32

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
  2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019) ........................................... 13, 36

*Fifth-Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ...................................................................................... 11

*Fish v. Greatbanc Tr. Co.*,
  2016 WL 5923448 (N.D. Ill. Sept. 1, 2016) ................................................ 37

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Gonzalez v. Northwell Health, Inc.*,
   632 F. Supp. 3d 148 (E.D.N.Y. 2022) ............................................................................ passim

*Hall v. Cap. One Fin. Corp.*,
   2023 WL 2333304 (E.D. Va. Mar. 1, 2023) ...................................................................... passim

*Hughes v. Nw. Univ.*,
   595 U.S. 170 (2022) .................................................................................................. 3, 8, 11, 32

*In re Calpine Corp. ERISA Litig.*,
   2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) ........................................................................ 37

*In re Meridian Funds Grp. Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
   917 F. Supp. 2d 231 (S.D.N.Y. 2013) .................................................................................... 40

*In re Nokia Erisa Litig.*,
   2011 WL 7310321 (S.D.N.Y. Sept. 6, 2011) ......................................................................... 37

*In re Reliant Energy ERISA Litig.*,
   336 F. Supp. 2d 646 (S.D. Tex. 2004) ................................................................................... 38

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
   441 F. Supp. 2d 579 (S.D.N.Y. 2006) .................................................................................... 40

*In re UBS Auction Rate Sec. Litig.*,
   2010 WL 2541166 (S.D.N.Y. June 10, 2010) ........................................................................ 20

*Jenkins v. Yager*,
   444 F.3d 916 (7th Cir. 2006) .......................................................................................... 23, 32

*Johnson v. Parker-Hannifin Corp.*,
   2023 WL 8374525 (N.D. Ohio Dec. 4, 2023) ............................................................. 21, 23, 24

*Kurtz v. Vail Corp.*,
   511 F. Supp. 3d 1185 (D. Colo. 2021) ..................................................................................... 5

*Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*,
   513 F. App'x 78 (2d Cir. 2013) .................................................................................. 13, 30, 31

*Lard v. Marmon Holdings, Inc.*,
   2023 WL 6198805 (N.D. Ill. Sept. 22, 2023) ......................................................................... 15

*Lewis v. Casey*,
   518 U.S. 343 (1996) ................................................................................................................ 40

*Locascio v. Fluor Corp.*,
   2023 WL 320000 (N.D. Tex. Jan. 18, 2023) ......................................................... 13, 24, 36, 40

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Luckett v. Wintrust Fin. Corp.*,
   2023 WL 4549620 (N.D. Ill. July 14, 2023) ................................................................. 1, 19, 22

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................................. 39

*Marks v. Trader Joe's Co.*,
   2020 WL 2504333 (C.D. Cal. Apr. 24, 2020) ......................................................................... 39

*Matney v. Barrick Gold of N. Am.*,
   80 F.4th 1136, 1148 (10th Cir. 2023) ....................................................................................... 19

*Matousek v. MidAmerican Energy Co.*,
   51 F.4th 274 (8th Cir. 2022) ................................................................................. 15, 21, 24, 34

*Meiners v. Wells Fargo & Co.*,
   898 F.3d 820 (8th Cir. 2018) ............................................................................... 12, 15, 18, 20

*Moreno v. Deutsche Bank Americas Holding Corp.*,
   2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016) ......................................................................... 39

*Owolabi v. Bank of Am., NA*,
   2019 WL 463849 (S.D.N.Y. Feb. 6, 2019) .............................................................................. 34

*Parmer v. Land O'Lakes, Inc.*,
   518 F. Supp. 3d 1293 (D. Minn. 2021) ................................................................. 18, 20, 21, 23

*Patterson v. Morgan Stanley*,
   2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) .................................................................. passim

*Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ......................................................................................... passim

*Pizarro v. Home Depot, Inc.*,
   2022 WL 4687096 (N.D. Ga. Sept. 30, 2022) ......................................................................... 19

*Radcliffe v. Aetna, Inc.*,
   2021 WL 4477408 (D. Conn. Sept. 30, 2021) ......................................................................... 38

*Reetz v. Lowe's Cos.*,
   2021 WL 4771535 (W.D.N.C. Oct. 12, 2021) ................................................................... 18, 23

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
   2016 WL 7494320 (D. Conn. Dec. 30, 2016) ..................................................................... 5, 38

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Rosen v. Prudential Ret. Ins. & Annuity Co.*,
    718 F. App'x 3 (2d Cir. 2017) .................................................. 36

*Schave v. CentraCare Health Sys.*,
    2023 WL 1071606 (D. Minn. Jan. 27, 2023) ........................... 23

*Smith v. CommonSpirit Health*,
    2021 WL 4097052 (E.D. Ky. Sept. 8, 2021) ............................ 16

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) .......................................... passim

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008) ...................................................11

*Taveras v. UBS AG*,
    612 F. App'x 27 (2d Cir. 2015) .............................................. 40

*Tibble v. Edison Int'l*,
    843 F.3d 1187 (9th Cir. 2016) ............................................... 23

*Tullgren v. Booz Allen Hamilton*,
    2023 WL 2307615 (E.D. Va. Mar. 1, 2023) ......................... passim

*Tussey v. ABB, Inc.*,
    746 F.3d 327 (8th Cir. 2014) ................................................. 36

*Wehner v. Genentech, Inc.*,
    2021 WL 2417098 (N.D. Cal. June 14, 2021) ...................... 5, 24

*Wehner v. Genentech, Inc.*,
    2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ...................... 5, 6, 31

*White v. Chevron Corp.*,
    2017 WL 2352137 (N.D. Cal. May 31, 2017) .......................... 14

*White v. Chevron Corp.*,
    752 F. App'x 453 (9th Cir. 2018) ........................................... 12

*Wilcox v. Georgetown Univ.*,
    2019 WL 132281 (D.D.C. Jan. 8, 2019) ........................... 13, 20

**Statutes**

29 U.S.C. § 1104(a)(1)(B) ......................................................... 12

29 U.S.C. § 1105(a) ................................................................... 38

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

**Regulations**

29 C.F.R. § 2509.75-8 .................................................................................. 37

29 C.F.R. § 2550.404a-1(b)(1)(i) ................................................................. 13

## INTRODUCTION

Plaintiff's initial complaint, filed in July 2022, was nearly identical to ten others filed by the same counsel against fiduciaries of large retirement plans across the country.[1]  In those cases, like this one, the plaintiffs alleged that plan fiduciaries breached their duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by retaining the BlackRock LifePath Index Funds ("BlackRock TDFs")—a popular, low cost, highly rated suite of target date funds— because the BlackRock TDFs purportedly underperformed, at times, compared to four target date fund suites hand-picked for purposes of litigation.  Courts have consistently rejected those allegations as insufficient to state a claim.  Those decisions correctly recognize that allegations regarding investment performance alone do not support an inference of fiduciary imprudence; that the purported comparator target date funds are not meaningful benchmarks for evaluating the BlackRock TDFs' performance in light of their different strategies; and that even if they were, the alleged performance pattern—showing the BlackRock TDFs *outperforming* at many points in the relevant period, and underperforming only by slight margins in other, relatively brief windows of time—still would not plausibly suggest a fiduciary breach.[2]  Moreover, courts have noted that the plaintiffs' allegations about the BlackRock TDFs' low fees and "significantly improved performance" later in the class period "cut *against* an inference of imprudence." *Bracalente*, 2023 WL 5184138, at *4 (emphasis added).

---

[1] *See Tullgren v. Booz Allen Hamilton*, 2023 WL 2307615, at *2 n.1 (E.D. Va. Mar. 1, 2023) (collecting cases), *appeal voluntarily dismissed*, 2023 WL 6458653 (4th Cir. May 12, 2023).

[2] *See Abel v. CMFG Life Ins. Co*., 2024 WL 307489 (W.D. Wis. Jan. 26, 2024); *Antoine v. Marsh & McLennan Cos.*, 2023 WL 6386005 (S.D.N.Y. Sept. 30, 2023); *Bracalente v. Cisco Sys., Inc*., 2023 WL 5184138 (N.D. Cal. Aug. 11, 2023); *Luckett v. Wintrust Fin. Corp*., 2023 WL 4549620 (N.D. Ill. July 14, 2023); *Anderson v. Advance Publ'ns, Inc*., 2023 WL 3976411 (S.D.N.Y. June 13, 2023); *Beldock v. Microsoft Corp.*, 2023 WL 1798171 (W.D. Wash. Feb. 7, 2023); *Hall v. Cap. One Fin. Corp*., 2023 WL 2333304 (E.D. Va. Mar. 1, 2023), *appeal voluntarily dismissed*, 2023 WL 6388629 (4th Cir. May 12, 2023); *Tullgren*, 2023 WL 2307615.

With every decision assessing materially the same allegations holding that they fall short, plaintiff chose to amend the complaint before the Court ruled on the initial motion to dismiss filed by Citigroup, Inc. ("Citi").  The amended complaint, however, fails to address the deficiencies in plaintiff's claims.  Like the original complaint, the amended complaint challenges the retention of the BlackRock TDFs based solely on their performance.  Like the original complaint, the amended complaint proposes to evaluate whether the BlackRock TDFs "underperformed" by comparing their returns to four other target date funds that courts have repeatedly held are not appropriate benchmarks.  And like the original complaint, the amended complaint alleges only that over relatively brief periods the BlackRock TDFs had slightly lower returns than those other funds.

The amended complaint adds two performance metrics not included in the original complaint:  a comparison of the BlackRock TDFs against the S&P Target Date Indices, a set of composite indices that essentially reflect a hypothetical market-average target date strategy, and a comparison of the BlackRock TDFs against other strategies based on Sharpe ratios, a measure of risk-adjusted returns.  These allegations, too, are nothing new.  Courts in other BlackRock TDF cases have rightly held that these additional measures of performance do not make a difference in stating a claim.  *See Anderson*, 2023 WL 3976411, at *3; *Beldock v. Microsoft Corp.*, 2023 WL 3058016, at *3 (W.D. Wash. Apr. 24, 2023); *Hall*, 2023 WL 2333304, at *5, *7; *Tullgren*, 2023 WL 2307615, at *5, *7.  These additional metrics do not negate the fact that plaintiff's challenge to the BlackRock TDFs rests exclusively on their performance, which is not a valid basis for a fiduciary breach claim.  *See Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) ("*St. Vincent*").  Nor do they cure plaintiff's failure to tie her performance allegations to a meaningful

benchmark.  Like the four target date fund suites identified in the original complaint, the S&P

Target Date Indices reflect a different strategic asset allocation and risk profile than the

BlackRock TDFs.  Similarly, Sharpe ratios are just another way to compare how, in hindsight,

distinct strategies performed in a given set of market conditions—such comparisons raise no

inference of imprudence.  Plaintiff, moreover, does not provide actual Sharpe ratio values for any

fund, making it impossible to assess the magnitude and significance of any differences, and

plaintiff fails again to plead substantial, sustained underperformance on any metric compared to

any of her inapt benchmarks.

In a last-ditch effort to avoid dismissal, plaintiff asserts that the fiduciaries of the Citi

Retirement Savings Plan (the "Plan") failed to follow the guidelines in their own investment

policy statement ("IPS") by using custom benchmarks to monitor the performance of the

BlackRock TDFs.  This assertion is belied by the amended complaint itself, which alleges that

the IPS *specifically directed* the fiduciary committee to use the custom benchmarks.  Nothing in

either the IPS or ERISA required the fiduciary committee to measure the BlackRock TDFs

against any of plaintiff's flawed standards.  In the end, plaintiff's IPS allegations are nothing

more than repackaged allegations that the Plan's fiduciaries had to remove the BlackRock TDFs

because they sometimes had slightly lower returns than funds with different strategies and risk

profiles—allegations that courts have repeatedly held do not state a claim under ERISA.

As the Supreme Court has explained, courts evaluating ERISA fiduciary breach claims

"must give due regard to the range of reasonable judgments a fiduciary may make."  *Hughes v.

Nw. Univ.*, 595 U.S. 170, 177 (2022).  In deciding which target date funds to offer in the Plan,

the fiduciaries had to make a judgment about what long-term investment strategy to pursue out

of all the available options, including how much equity risk to tolerate, how to allocate that risk

over a participant's lifetime of saving, and whether to expose participants to the risk and expense of active management.  By design, different target date funds will end up performing differently under various market conditions, because they reflect different strategic choices about asset allocation and risk.  In retaining the BlackRock TDFs, the Plan's fiduciaries opted for a low-cost solution designed to drive growth early on, protect assets in the approach to retirement, and mitigate inflation risk during retirement.  Plaintiff's allegations do not plausibly suggest that decision was outside the range of reasonable choices available to the Plan's fiduciaries in the circumstances.  The amended complaint should be dismissed.

**FACTUAL BACKGROUND AND ALLEGATIONS**

**A.     The Plan**

Citi is a multinational financial services corporation that, as relevant to this case, sponsors the Plan to help eligible employees save for retirement.  Am. Compl., ECF No. 75 ("AC") ¶¶ 5, 10.  The Plan is a participant-directed, defined contribution 401(k) plan, meaning that participants maintain individual accounts funded through contributions from their employer (here, Citi) and/or salary deferments.  *Id.* ¶ 17.  In a 401(k) plan, participants are offered a menu of investment options to which they may direct the assets in their individual accounts.  *Id.*  The balance in each participant's account depends primarily on the amount of contributions and the performance of the investment options in which the participant invests, net of fees.  *See id.*

The Plan is overseen in relevant part by the 401(k) Plan Investment Committee ("Committee"), which is responsible for selecting, monitoring, and (where appropriate) removing Plan investment options.  *See id.* ¶ 31.  Throughout the relevant period, the Committee's process has been guided by an IPS setting forth the Plan's general investment objectives, defining certain roles and responsibilities of the Committee and its designees, and explaining the processes to be followed in reviewing the investment menu structure and

4

selecting, monitoring, and removing Plan investment options.  *Id.* ¶ 22; *see* Ex. A (IPS).[3]

The Plan's investment menu includes a range of alternatives across various asset classes,

risk profiles, and investment strategies.  *See* AC ¶ 17; Ex. B (2022 Plan Form 5500), Sched. H,

Line 4i (listing investment options as of year-end 2022).[4]  The Plan's qualified default

investment alternative is the BlackRock TDFs, which are offered alongside options permitting

participants to customize the risk exposure in their individual accounts.  AC ¶ 30; *see* Ex. B

(2022 Plan Form 5500), Sched. H, Line 4i.

### B.    Target Date Funds

Target date funds are long-term investments designed to provide a single, diversified

investment vehicle for building assets to fund retirement.  AC ¶ 25.  They are offered as a suite

of funds (or "vintages") identified by the year the participant is likely to retire (*e.g.*, 2025, 2035,

2045).  *See id.* ¶ 30 & n.11; Ex. C (U.S. Dep't of Labor, Target Date Retirement Funds – Tips for

ERISA Plan Fiduciaries) at 1.[5]  Each vintage of a target date fund suite has a "fund of funds"

---

[3] Because, as further discussed below, the amended complaint repeatedly references the IPS in purported support of plaintiff's allegations, the IPS is integral to plaintiff's claims and properly considered in resolving Citi's motion to dismiss.  *See, e.g.*, *Wehner v. Genentech, Inc.*, 2021 WL 507599, at *3 (N.D. Cal. Feb. 9, 2021) (considering IPS on motion to dismiss where complaint "put the terms of th[e] document directly at issue"); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *11 (S.D.N.Y. Oct. 7, 2019) (documents "upon which Plaintiffs rely in their Complaint" are properly considered in resolving motion to dismiss).

[4] The amended complaint explicitly references the Plan's Form 5500 filings, *see* AC ¶ 30 n.10, and courts regularly consider Form 5500s, which are filed with the Department of Labor and publicly available on its website, in resolving motions to dismiss.  *See Rosen v. Prudential Ret. Ins. & Annuity Co.*, 2016 WL 7494320, at *9 (D. Conn. Dec. 30, 2016), *aff'd*, 718 F. App'x 3 (2d Cir. 2017); *see also Wehner v. Genentech, Inc.*, 2021 WL 2417098, at *3 (N.D. Cal. June 14, 2021); *Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1191 (D. Colo. 2021).

[5] The Court may take judicial notice of publicly available Department of Labor publications, and the amended complaint directly cites "Tips for ERISA Plan Fiduciaries."  AC ¶ 27 n.6; *see Controlled Air, Inc. v. Barr*, 2020 WL 979874, at *3 n.2 (D. Conn. Feb. 28, 2020) (explaining that "[a]gency publications that offer administrative guidance are public records of which a court may properly take judicial notice" (quotation marks omitted)), *aff'd*, 826 F. App'x 121 (2d Cir.

structure; it invests in multiple underlying funds across various asset classes, including equities and fixed-income securities, to create a diversified portfolio.  AC ¶¶ 25, 37; *see* Ex. C (U.S. Dep't of Labor, Target Date Retirement Funds – Tips for ERISA Plan Fiduciaries) at 1.

Target date funds rebalance their portfolios to become more conservative over time, following a "glide path" set by the fund's manager.  AC ¶ 25.  Early in the glide path, at the point farthest from retirement, target date funds usually hold primarily equity investments, "which often have greater potential for higher returns but also can be more volatile and carry greater investment risk."  Ex. C (U.S. Dep't of Labor, Target Date Retirement Funds – Tips for ERISA Plan Fiduciaries) at 1.  Over time, "the fund's asset allocation shifts to include a higher proportion of more conservative investments, like bonds and cash instruments, which generally are less volatile and carry less investment risk than stocks."  *Id.*; *see* AC ¶ 25, *see also id.* ¶¶ 51- 52 (illustrating glide paths with decreasing equity allocations).

While all target date funds share these basic features, "there are considerable differences among TDFs offered by different providers, even among TDFs with the same target date."  Ex. C (U.S. Dep't of Labor, Target Date Retirement Funds – Tips for ERISA Plan Fiduciaries) at 1. One broad distinction among target date strategies is whether they use a "to retirement" or "through retirement" glide path.  AC ¶ 26; *see* Ex. C (U.S. Dep't of Labor, Target Date Retirement Funds – Tips for ERISA Plan Fiduciaries) at 1.  A "to retirement" glide path reaches its most conservative asset allocation on the target retirement date, while a "through retirement" glide path continues its progression through the target retirement date, reaching its most conservative allocation at some point thereafter.  AC ¶ 26.  These two types of glide paths reflect

_____

2020); *Anderson v. Intel Corp.*, 2021 WL 229235, at *4 (N.D. Cal. Jan. 21, 2021) (concluding that DOL publication was "properly subject to judicial notice" as a "government document[]"); *Wehner*, 2021 WL 507599, at *8 (citing "Tips for ERISA Plan Fiduciaries").

somewhat different approaches to balancing various risks over time, including "the risk of a market decline significantly diminishing assets" and "the risk of outliving savings."  *Id.* ¶ 27.

Within the general "through retirement" and "to retirement" categories, target date funds may vary significantly in the percentage of their portfolios allocated to equities at different points along the glide path.  *See* AC ¶¶ 37-38, 51-52.  And although "through retirement" glide paths all reduce equity exposure after the target retirement date, some "through retirement" glide paths may still have greater exposure to equities during retirement—and greater potential losses in the event of a "market decline," *id.* ¶ 27—than "to retirement" alternatives.  *See id.* ¶ 52.

Target date suites vary in still more ways.  Beyond the high-level "equity" and "fixed-income" divide, they may differ in what asset classes they employ, and in what amounts across the glide path.  For example, different target date funds hold domestic and international equities in different proportions, and there is also substantial variation in the specific fixed-income asset classes target date fund strategies hold.  *See* Ex. D (Morningstar Target Date Strategy Landscape) at 28-31, 40 & Ex. 39.[6]  Moreover, some target date funds (including the BlackRock TDFs) also use diversifying allocations to real estate, commodities, and inflation-protected securities to mitigate risks in certain market environments.  *See, e.g.*, Ex. E (2022 BlackRock 2045 Fund DFE Form 5500) at Sched. D, Part 1 (listing underlying holdings in BlackRock TDFs).

---

[6] The Court may consider the 2022 Morningstar Target Date Strategy Landscape in resolving Citi's motion to dismiss because plaintiff relies on it to support the allegations in the amended complaint.  AC ¶ 27 n.9; *see Beldock*, 2023 WL 1798171, at *2 n.6 (considering same report when evaluating BlackRock TDF claims because plaintiffs "rel[ied] on it in their complaint"); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1168 (6th Cir. 2022) (considering 2021 version of same report in affirming dismissal of investment-performance claims); *see also Patterson*, 2019 WL 4934834, at *11 (documents "upon which Plaintiffs rely in their Complaint" are properly considered at dismissal stage).

In addition to the various dimensions across which the asset allocations of different target date funds may differ, the underlying funds in which a target date strategy invests can be either actively or passively managed.  AC ¶ 28.  With an actively managed fund, the portfolio manager conducts research to select or avoid securities that may add or subtract value, with the aim of generating returns that exceed those of a relevant benchmark index.  *See id.* ¶ 36; *CommonSpirit*, 37 F.4th at 1163.  With a passive (or "index") fund, the portfolio manager instead attempts to closely track the performance of a relevant market index.  *See id.*  Passive strategies avoid certain risks that come with active management, including the risk of below-benchmark returns.  AC ¶ 28.  Passive strategies also generally have lower fees than actively managed strategies.  *See id.*; *Hughes*, 595 U.S. at 174.  The returns of index-fund-based target date strategies derive primarily from their asset allocations (and low fees), not from the stock-picking performance of underlying fund managers.

The Department of Labor has advised fiduciaries selecting target date funds for their plan to consider a variety of factors, including investment strategy, glide path, fees, performance, and the strategy's alignment with the needs of the plan participant population.  Ex. C (U.S. Dep't of Labor, Target Date Retirement Funds – Tips for ERISA Plan Fiduciaries) at 1-2.  Once a strategy has been chosen, the Department of Labor instructs that fiduciaries should periodically review the funds, monitoring for "any significant changes in the information … considered when the option was selected or last reviewed."  *Id.* at 2.  And the Department of Labor has explained that fiduciaries may need to consider replacing a target date fund suite if its "investment strategy or management team changes significantly," if the "manager is not effectively carrying out the fund's stated investment strategy," or if the "plan's objectives in offering a TDF change."  *Id.*

### C.    Plaintiff's Claims

Plaintiff Juliette Motz is a former Citi employee and a former participant in the Plan.  AC

¶ 9.  She purports to bring her claims on behalf of a class of all participants and beneficiaries in the Plan at any time on or after July 29, 2016 through the date of judgment (the "class period"). *Id.* ¶ 78.  Plaintiff alleges that, in the class period, the BlackRock TDFs at times had lower trailing returns than target date funds available from other providers—specifically the Vanguard Target Retirement, T. Rowe Price Retirement, American Funds Target Date Retirement, and Fidelity Freedom Index funds (together, the "Alternative TDFs")—and did not beat the S&P Target Date Indices.  *Id.* ¶¶ 48, 53-71.  Plaintiff also alleges that the BlackRock TDFs sometimes had lower Sharpe ratios (a measure of risk-adjusted returns) than the Alternative TDFs or some other, unspecified "peer" funds.  *Id.* ¶¶ 58-59.  Plaintiff asserts that these performance metrics show that the BlackRock TDFs "were not a suitable and prudent option for the Plan" and could have been retained only through "a fundamentally irrational decision-making process."  *Id.* ¶¶ 32-33.  Count I asserts a claim for breach of fiduciary duty based on the retention of the BlackRock TDFs, and Counts II and III assert claims for failure to monitor fiduciary appointees and, in the alternative, for knowing breach of trust.  Like Count I, Counts II and III depend on the premise that no prudent fiduciary would have retained the BlackRock TDFs in the Plan.

The amended complaint and incorporated materials reflect several differences between the BlackRock TDFs and Alternative TDFs.  Specifically, the amended complaint notes that the BlackRock TDFs use a "to retirement" glide path, AC ¶ 54 n.21, and plaintiff's allegations about the funds' equity allocations show that, unlike the BlackRock TDFs, all of the Alternative TDFs use a "through retirement" glide path—*i.e.*, the equity allocation continues to decrease after the retirement date, *see id.* ¶¶ 51-52.  The same allegations also show that the current equity allocations of the BlackRock TDFs and Alternative TDFs vary at any given point along the glide path, with the BlackRock TDFs employing higher equity allocations early in a participant's

career, when they have plenty of time to recover from market downturns, but embracing relatively lower risk as retirement approaches.  *See id.* ¶¶ 51-52.  The amended complaint does not address any other aspects of the funds' asset allocations beyond the equity/fixed income split, but the Morningstar report on which plaintiff relies illustrates that the funds differ, for example, in the specific fixed-income asset classes that they hold.  *See* Ex. D (Morningstar Target Date Strategy Landscape) at 40 & Ex. 39.  Similarly, the amended complaint and Morningstar report show while the BlackRock TDFs invest in passively managed underlying funds, AC ¶ 38, two of the Alternative TDFs—the T. Rowe Price and American Funds TDFs—rely on active management, *see* Ex. D (Morningstar Target Date Strategy Landscape) at 8, 22, 40.

The amended complaint does not allege that the asset allocation and risk profile of the S&P Target Date Indices aligns with that of the BlackRock TDFs, but rather asserts just the opposite:  that the indices are "a composite of the disparate strategies and styles present in the broad universe of investable alternative TDFs" and therefore "provide an amalgamation of the different characteristics of TDF strategies:  TDFs with actively and passively managed underlying funds, TDFs with different risk profiles, and … [TDFs] with different asset allocations."  AC ¶ 44.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A claim has facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  If "the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief."  *Id.* at 679 (quotation marks and brackets omitted).

In resolving a motion to dismiss under Rule 12(b)(6), the court may consider not only the well-pled factual allegations in the complaint, but also materials incorporated by reference into or integral to the complaint. *See, e.g.*, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). Courts may also consider information and materials that are properly subject to judicial notice. *See, e.g.*, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). Although a court must generally take the complaint's well-pled factual allegations as true, it is not required to assume the truth of allegations "contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *Collier v. Aksys Ltd.*, 2005 WL 1949868, at *12 n.7 (D. Conn. Aug. 15, 2005), *aff'd*, 179 F. App'x 770 (2d Cir. 2006); *see Abuhamdan v. Blyth, Inc.*, 9 F. Supp. 3d 175, 196 n.18, 202 n.23 (D. Conn. 2014).

As the Supreme Court has emphasized, motions to dismiss are an "important mechanism for weeding out meritless claims" in ERISA class actions in particular. *Fifth-Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). To ensure that motions to dismiss serve that crucial sorting function, courts must apply "careful, context-sensitive scrutiny of a complaint's allegations" when evaluating whether they raise a plausible inference of a fiduciary breach, *id.*, giving "due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise," *Hughes*, 595 U.S. at 177.

## ARGUMENT

## I.    The Amended Complaint Fails To Plausibly Allege A Breach Of Fiduciary Duty

Plaintiff's claim of imprudence rests entirely on allegations about the performance of the BlackRock TDFs. *See* AC ¶¶ 30-31, 45, 53-71. Plaintiff alleges that because the BlackRock TDFs at times had lower absolute and risk-adjusted returns than the Alternative TDFs and S&P Target Date Indices, it is plausible to infer that the Plan fiduciaries did not prudently monitor the

BlackRock TDFs and arrive at a reasoned decision to retain them.  Those allegations do not state a claim for breach of ERISA's duty of prudence.

As the Second Circuit has held in unison with other courts of appeals, hindsight-based allegations of investment underperformance standing alone are not enough to raise a plausible inference of fiduciary imprudence.  *See St. Vincent*, 712 F.3d at 716; *see also CommonSpirit*, 37 F.4th at 1167; *White v. Chevron Corp.*, 752 F. App'x 453, 455 (9th Cir. 2018); *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 424 (4th Cir. 2007).  If combined with allegations about other indicia of imprudence, a plaintiff may attempt to generate an inference of fiduciary neglect by alleging that fiduciaries tolerated sustained underperformance relative to a "meaningful benchmark."  *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018).  The amended complaint, however, shows neither:  plaintiff cannot establish that the Alternative TDFs or S&P Target Date Indices are an appropriate benchmark for the BlackRock TDFs, nor do the facts alleged show that the BlackRock TDFs exhibited consistent, substantial underperformance relative to those measures in any case.

Multiple courts have rejected materially the same allegations about the BlackRock TDFs for precisely these reasons.  *See supra* at 1 n.2 (collecting cases).  This Court should do the same.

### A.      Plaintiff's Claims Rest Entirely On The Performance Of The BlackRock TDFs, Which Does Not State A Claim Under ERISA

To state a claim for breach of ERISA's duty of prudence, a plaintiff must plausibly allege that the fiduciaries in question failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use."  29 U.S.C. § 1104(a)(1)(B).  The prudence inquiry "focuses on a fiduciary's conduct in arriving at an investment decision, not on its results, and asks whether a fiduciary employed the appropriate methods to investigate and determine the merits of a

particular investment." *St. Vincent*, 712 F.3d at 716 (citation and alterations omitted); *see also* 29 C.F.R. § 2550.404a-1(b)(1)(i).  Put simply, ERISA "requires prudence, not prescience." *St. Vincent*, 712 F.3d at 716 (quotation marks omitted).

While the performance of an investment in some circumstances may, if combined with other factors suggestive of imprudence, support an inference that the fund was selected or retained by imprudent means, allegations about performance alone—even a "precipitous[]" drop in value—do not "state a claim under ERISA."  *Id.* at 721 (emphasis omitted); *see Laboy v. Bd. of Trs. of Bldg. Serv. 32 BJ SRSP*, 513 F. App'x 78, 80 (2d Cir. 2013); *Boyette v. Montefiore Med. Ctr.*, 2023 WL 7612391, at *7 (S.D.N.Y. Nov. 13, 2023); *Anderson*, 2023 WL 3976411, at *3; *Patterson*, 2019 WL 4934834, at *11; *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at *9 (S.D.N.Y. Sept. 18, 2019).  ERISA, in other words, "does not provide a cause of action for 'underperforming funds.'"  *Wilcox v. Georgetown Univ.*, 2019 WL 132281, at *11 (D.D.C. Jan. 8, 2019).  Markets are often unpredictable, and "a flawed fiduciary process can result in great returns while a diligent and complete fiduciary process can result in underperformance."  *Locascio v. Fluor Corp.*, 2023 WL 320000, at *6 (N.D. Tex. Jan. 18, 2023).[7]

The amended complaint alleges only that the BlackRock TDFs had lower trailing returns than some other funds and benchmarks at some times in the class period.[8]  It offers no

---

[7] The same principle governs regardless of whether the alleged underperformance is measured in absolute or risk-adjusted returns.  *See, e.g.*, *Beldock*, 2023 WL 3058016, at *3 (dismissing BlackRock TDF claims and explaining Sharpe ratio comparisons were "'merely [an] additional measurement[] of investment performance,'" and "courts across the country have rejected claims for breach of the fiduciary duty of prudence under ERISA where the plaintiffs allege nothing more than underperformance relative to other investment vehicles" (quoting *Hall*, 2023 WL 2333304, at *6)); *Tullgren*, 2023 WL 2307615, at *6 (similar).

[8] The amended complaint vaguely refers to unspecified "merits and features" of other available target date funds, AC ¶ 32, but it never elaborates on what those "merits and features"

allegations about any "red flags," "warning signs," or "other indicia of imprudence" that the Committee supposedly ignored. *See CommonSpirit*, 37 F.4th at 1167; *St. Vincent*, 712 F.3d at 721-22; *White v. Chevron Corp.*, 2017 WL 2352137, at *20 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018). To the contrary, plaintiff's other allegations undercut the theory that the BlackRock TDFs were unreasonable choices for retirement plan investing. The amended complaint concedes that the BlackRock TDFs have "low fees," AC ¶ 32, and are the third largest target date series on the market, with nearly $300 billion in assets under management, *id.* ¶ 48. The BlackRock TDFs have more than $200 billion invested through collective trust vehicles available only to institutional investors like qualified retirement plans, signaling strong fiduciary support. *See id.* ¶ 48. And even as plaintiff contends that any prudent fiduciary would have abandoned the BlackRock TDFs in the relevant period, the Morningstar report cited in the amended complaint shows that the BlackRock TDFs had net inflows of more than $24 billion in 2021 alone, with $19.1 billion in net inflows in the collective trusts. Ex. D (Morningstar Target Date Strategy Landscape) at 8-9 & Exs. 9-10. The same report also indicates that the BlackRock TDFs earned a "Gold" analyst rating from Morningstar—the highest possible rating. *Id.* at 19 & Ex. 21 (mutual funds), 20 & Ex. 22 (CITs). These are funds that have been thriving under competitive market conditions—exactly the opposite of "warning signs" that would keep any prudent fiduciary away. *See, e.g.*, *Bracalente*, 2023 WL 5184138, at *4 (concluding that allegations in similar BlackRock TDF case "cut against an inference of imprudence").

Considering similar information about another target date fund strategy, the Sixth Circuit explained it "would need significantly more serious signs of distress to allow an imprudence

---

are or why they would have prompted prudent fiduciaries to choose other options over the BlackRock TDFs. *See, e.g.*, *Bracalente*, 2023 WL 5184138, at *4 (noting same omission).

claim to proceed." *CommonSpirit*, 37 F.4th at 1168.  The amended complaint pleads no "signs of distress" at all, alleging only facts indicating broad market acceptance of the BlackRock TDFs.  Needless to say, that does not plausibly suggest that any prudent fiduciary would have rejected the BlackRock TDFs, as courts have repeatedly concluded in dismissing claims based on nearly identical allegations.  As in those cases, "[i]n so many words, [p]laintiff alleges that the BlackRock TDFs underperformed," and that is not enough to state a claim.  *Anderson*, 2023 WL 3976411, at *3 (citing *St. Vincent*, 712 F.3d at 718); *see Abel*, 2024 WL 307489, at *6; *Beldock*, 2023 WL 3058016, at *3; *Bracalente*, 2023 WL 5184138, at *5; *Hall*, 2023 WL 2333304, at *5-6; *Tullgren*, 2023 WL 2307615, at *5.  That alone requires dismissal.

## B. The Amended Complaint Does Not Plausibly Allege Underperformance Relative To A Meaningful Benchmark

The amended complaint also fails to plausibly allege "underperformance" at all, because it does not compare the BlackRock TDFs' returns to an appropriate benchmark.

To allege the type of underperformance that may contribute to an inference of imprudence, "a plaintiff must provide a sound basis for comparison—a meaningful benchmark." *Meiners*, 898 F.3d at 822; *see Albert v. Oshkosh Corp.*, 47 F.4th 570, 581-82 (7th Cir. 2022); *CommonSpirit*, 37 F.4th at 1167; *Patterson*, 2019 WL 4934834, at *13.  To establish a "meaningful benchmark," a plaintiff must plead facts demonstrating that the comparators "hold similar securities, have similar investment strategies, and reflect a similar risk profile." *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281 (8th Cir. 2022); *see, e.g.*, *Lard v. Marmon Holdings, Inc.*, 2023 WL 6198805, at *5 (N.D. Ill. Sept. 22, 2023) (complaint failed "to establish a sound basis of comparison" because it did not address factors such as "investment strategy, management style, or risk profile").  While "there is no one-size-fits all approach," courts have emphasized that comparing funds with "different aims, different risks, and different

potential rewards that cater to different investors … is not a way to show that one is better or worse than the other." *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020); *see Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 165 (E.D.N.Y. 2022).

Plaintiff has not alleged—and cannot allege—facts establishing that the Alternative TDFs and S&P Target Date Indices are apt comparators for the BlackRock TDFs.  Rather, plaintiff's allegations confirm that the BlackRock TDFs performed differently from the Alternative TDFs and S&P Target Date Indices because they *are* fundamentally different.  As detailed below, the amended complaint and incorporated materials show that the BlackRock TDFs "have different aims, different risks, and different potential rewards" than the funds and indices to which plaintiff proposes to compare them.  *Davis*, 960 F.3d at 485.  The Alternative TDFs and S&P Target Date Indices accordingly are not appropriate benchmarks for the BlackRock TDFs, and the amended complaint does not plausibly allege that the BlackRock TDFs "underperformed."

1.    **The Alternative TDFs Have Different Glide Path Strategies And Asset Allocations From The BlackRock TDFs**

The amended complaint compares the returns of the BlackRock TDFs principally to those of four other target date fund suites, offered by Vanguard, T. Rowe Price, American Funds, and Fidelity.  AC ¶¶ 48-49.  Plaintiff, however, does not provide factual allegations to show that the Alternative TDFs have strategies and risk profiles similar to the BlackRock TDFs.  Plaintiff alleges only that the Alternative TDFs are an "ideal group for comparison" because, due to their size, they purportedly were "the most likely alternatives to be selected were the BlackRock TDFs to be replaced."  *Id.* ¶ 49.[9]  The scale of the Alternative TDFs says nothing about whether the

_____

[9] Plaintiff omits the actively managed Fidelity Freedom Funds from her group of Alternative TDFs, asserting that the popular and highly rated Freedom Funds are also imprudent options for retirement plan investment, *see* AC ¶ 49 & n.16, as her counsel has alleged in several other lawsuits, *see, e.g.*, *Smith v. CommonSpirit Health*, 2021 WL 4097052, at *6-8 (E.D. Ky. Sept. 8,

funds were sufficiently similar to the BlackRock TDFs to serve as a meaningful performance benchmark.  Recognizing this deficiency, several courts have found analogous allegations insufficient to establish that the Alternative TDFs are "meaningful benchmarks" for the BlackRock TDFs, particularly in light of "other allegations showing significant differences between the BlackRock TDFs and the [Alternative] TDFs."  *Abel*, 2024 WL 307489, at *5.[10]

The amended complaint graphically illustrates the different glide paths used by the BlackRock TDFs and the Alternative TDFs:



---

[10] Plaintiff notes that certain Committee materials included information about the Alternative TDFs, *see* AC ¶ 50 n.17, but plaintiff does not and cannot allege that the Committee used the Alternative TDFs as benchmarks for the BlackRock TDFs.  *See* AC ¶¶ 39-41 (alleging that IPS identified only the custom benchmark as the benchmark for the BlackRock TDFs and Committee's quarterly investment performance reports compared the BlackRock TDFs only to their custom benchmarks).  In fact, the amended complaint alleges that the September 2020 "review of other large TDF providers" considered by the Committee "contained no performance data" for the Alternative TDFs.  AC ¶ 50 n.17.

AC ¶ 52.  The Court need look no further than that to conclude that plaintiff is comparing apples to oranges.  As illustrated above, the funds embrace different equity allocations over time, which means that they will perform differently under any given set of market conditions.  *See, e.g.*, *Reetz v. Lowe's Cos.*, 2021 WL 4771535, at *55 (W.D.N.C. Oct. 12, 2021), *aff'd sub nom. Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 74 F.4th 171 (4th Cir. 2021).  All else being equal, for vintages where BlackRock has a higher equity allocation than the alternatives (like the 2060 vintage), it will generally perform better when equity markets are strong and worse when equity markets are weak; and for vintages where BlackRock has a lower equity allocation than the alternatives (like the 2025 vintage), the opposite will generally be true.

Due to these differences and others discussed below, to the extent the funds perform differently, it is because they embrace different investment strategies that are borne out in their different asset allocations, including periods of relative conservatism along the glide path, as ERISA permits.  AC ¶ 51; *see, e.g.*, *Barchock v. CVS Health Corp.*, 886 F.3d 43, 49-55 (1st Cir. 2018).  These sorts of strategic differences are precisely why courts reject comparisons between funds with distinct asset allocations as inadequate to support an inference of imprudence.  *See, e.g.*, *Meiners*, 898 F.3d at 823 & n.2 (target date suite with lower allocation to bonds had "a different investment strategy" and fact that it "ultimately performed better does not establish anything about whether the [challenged] TDFs were an imprudent choice"); *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1307 (D. Minn. 2021) (fund with "equity-heavy" allocation was not apt comparator for fund with "bond-heavy weighting").

The glide path graphic reproduced above illustrates an additional, related difference between the BlackRock TDFs and the Alternative TDFs:  the BlackRock TDFs employ a "to retirement" glide path (*i.e.*, they reach their lowest equity allocation at the target retirement date,

represented by the 2020 vintage in this illustration), while all of the Alternative TDFs use a "through retirement" glide path (*i.e.*, their equity allocation continues to decrease into retirement, as shown in the vintages to the right of the 2020 vintage in the graphic).  *See* AC ¶¶ 51-52; *see also* Ex. D (Morningstar Target Date Strategy Landscape) at 38 & Ex. 38.  Plaintiff acknowledges that "to retirement" glide paths offer certain benefits over a "through retirement" approach, including "greater potential protection against downside risk" around the target retirement date, AC ¶ 27, which a prudent fiduciary could reasonably favor.[11]  Comparisons between "to retirement" and "through retirement" glide paths are "not meaningful," because the choice to pursue one strategy over the other inevitably results in differences in asset allocation and risk exposure at various points along the glide path.  *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1148, 1154 n.14 (10th Cir. 2023).  Recognizing that reality, several courts have held that the Alternative TDFs' use of "through retirement" glide paths makes them inapt comparators for the "to retirement" BlackRock TDFs.  *See Abel*, 2024 WL 307489, at *5; *Luckett*, 2023 WL 4549620, at *3-4 & n.3; *see also Pizarro v. Home Depot, Inc.*, 2022 WL 4687096, at *24 & n.210 (N.D. Ga. Sept. 30, 2022), *appeal docketed*, No. 22-13643 (11th Cir. Oct. 26, 2022).

  The problems with plaintiff's proposed comparison to the Alternative TDFs do not end there.  Plaintiff's allegations also overlook that the glide paths themselves have changed over time.  The amended complaint relies on performance data going all the way back to the second quarter of 2011, *see* AC ¶ 59 (alleging 5-year trailing returns as of 2Q 2016), and suggests that

---

[11] Although the amended complaint alleges that "through retirement" glide paths have become somewhat more common in recent years, AC ¶ 27, it identifies nothing to suggest a "to retirement" approach is not also a reasonable option.  And ERISA's duty of prudence does not require fiduciaries to "follow[] the crowd" when it comes to investments.  *DeBruyne v. Equitable Life Assurance Soc'y*, 920 F.2d 457, 465 (7th Cir. 1990); *see Anderson*, 2021 WL 229235, at *10; *Barchock v. CVS Health Corp.*, 2017 WL 9324762, at *5 (D.R.I. Jan. 31, 2017), *adopted*, 2017 WL 1382517 (D.R.I. Apr. 18, 2017), *aff'd*, 886 F.3d 43 (1st Cir. 2018).

the BlackRock TDFs' performance cannot be explained by different equity allocations given that some vintages today have *more* equities than the alternatives, *id.* ¶ 51.  But publicly available, judicially noticeable fund prospectuses filed with the SEC demonstrate that the funds' glide paths have not been static over the years captured in plaintiff's performance comparisons.[12]  For example, plaintiff alleges that the BlackRock 2045 Fund in which she invested currently has a larger equity allocation than the Vanguard 2045 Fund—91 percent for BlackRock versus 84 percent for Vanguard.  AC ¶ 51 & n.19.  As of 2013, the opposite was true:  the Vanguard 2045 Fund had a higher equity allocation than the BlackRock 2045 Fund—90 percent for Vanguard versus 87 percent for BlackRock.  *See* Ex. F (excerpt of 2013 BlackRock TDF prospectus) at 45; Ex. G (excerpt of 2013 Vanguard TDF prospectus) at 50.  The Morningstar report cited in the amended complaint also observes that BlackRock updated its glide path in 2014 to include a larger equity allocation in earlier vintages.  *See* Ex. D (Morningstar Target Date Strategy Landscape) at 25.  As a matter of logic, plaintiff cannot criticize today's BlackRock TDFs based on the historical performance of a glide path the funds never used in the class period.

Last, the amended complaint ignores differences in asset allocation beyond the funds' broad allocations to equity and fixed income.  For instance, the Morningstar report cited in the amended complaint observes that different target date funds hold domestic and international equities in different proportions.  *See* Ex. D (Morningstar Target Date Strategy Landscape) at 28-

---

[12] The Court may consider prospectuses for the BlackRock TDFs and Alternative TDFs, which are publicly available from the SEC's EDGAR database (https://www.sec.gov/edgar), because those documents are integral to plaintiff's claims and also subject to judicial notice.  *See* AC ¶ 42 (referencing BlackRock TDF prospectuses); *In re UBS Auction Rate Sec. Litig.*, 2010 WL 2541166, at *7 & n.6 (S.D.N.Y. June 10, 2010) (taking judicial notice of prospectuses); *see also Meiners*, 898 F.3d at 823 (considering prospectuses in affirming dismissal of performance-based claims); *Davis*, 960 F.3d at 484 n.3 (same); *Parmer*, 518 F. Supp. 3d at 1302 (considering prospectuses in granting motion to dismiss); *Wilcox*, 2019 WL 132281, at *11 (same).

31.  Several target date suites, including some of the Alternative TDFs, have adjusted their

domestic/international equity split over time based on updated capital market assumptions and

other research.  *See id.*  The same report also shows substantial variation across target date

funds—including the BlackRock TDFs and the Fidelity and Vanguard TDFs—in the specific

fixed-income asset classes they hold.  *See id.* at 40 & Ex. 39; *see also Beldock*, 2023 WL

1798171, at *2 (noting, among other differences, that the BlackRock TDFs and Alternative TDFs

"invest in different categories of bonds and equities").  These kinds of more granular differences

in asset allocation, too, bear on whether a plaintiff has alleged facts establishing a meaningful

benchmark.  *See Tullgren*, 2023 WL 2307615, at *6 (plaintiffs did not allege meaningful

benchmark for BlackRock TDFs because, among other reasons, complaint did not address how

funds' "underlying equity and bond funds are allocated among the types and categories of

possible equity and bond funds"); *Hall*, 2023 WL 2333304, at *6 (same).[13]

In sum, mere apples-to-oranges comparisons between funds with different "glide path

strategies" do not plausibly allege "underperformance" or support a claim of imprudence.

*Parmer*, 518 F. Supp. 3d at 1306 (dismissing challenge to retention of target date funds); *see

also, e.g.*, *Johnson v. Parker-Hannifin Corp.*, 2023 WL 8374525, at *6-7 (N.D. Ohio Dec. 4,

2023) (similar), *appeal docketed*, No. 24-3014 (6th Cir. Jan. 4, 2024).

## 2. Target Date Funds That Rely On Active Management Are Not Apt Comparators For The Index-Fund-Based BlackRock TDFs

The glide path strategy and asset allocation issues just discussed show on their own that

---

[13] *See also, e.g.*, *Matousek*, 51 F.4th at 282 (fund with "growth" strategy was not a "sound" or "meaningful" comparator for fund with "value" strategy); *Davis*, 960 F.3d at 485-86 (funds allocating different percentages of their portfolios to international stock were "just different" (quotation marks omitted)); *Parmer*, 518 F. Supp. 3d at 1306-07 (prospectuses revealed "glaring differences" between funds, including with respect to holdings in "foreign currencies, high yield securities, and derivative instruments").

none of the Alternative TDFs is a "meaningful benchmark" for the BlackRock TDFs.  But there is also another important distinction between the BlackRock TDFs and the T. Rowe Price and American Funds TDFs:  unlike the BlackRock TDFs, the T. Rowe Price and American Funds TDFs invest in actively managed underlying funds.  *See* Ex. D (Morningstar Target Date Strategy Landscape) at 8, 22, 40.  Multiple courts have rejected proposed comparisons between the BlackRock TDFs and the T. Rowe Price and American Funds TDFs for precisely that reason (in addition to others).  *See Abel*, 2024 WL 307489, at *5; *Luckett*, 2023 WL 4549620, at *3-4; *see also Tullgren*, 2023 WL 2307615, at *6 n.4 (actively managed TDFs "would not serve as meaningful benchmarks" for the BlackRock TDFs); *Hall*, 2023 WL 2333304, at *6 n.5 (same).

The amended complaint recognizes important differences between target date funds that invest only in passive underlying funds and those that incorporate active management.  Target date funds that invest "primarily or entirely in passive strategies provide broad market exposure at minimal cost and avoid the risk of active management and style drift," while funds that rely on active management "tend to provide more diversified asset class exposure while offering the potential for excess returns," AC ¶ 28—along with a risk of *below*-benchmark returns. Fiduciaries can reasonably decide not to take on the added cost and risk of active management, as plaintiff herself appears to recognize by including passive strategies from Vanguard and Fidelity among the Alternative TDFs.  *See* Ex. D (Morningstar Target Date Strategy Landscape) at 40-41 & Ex. 39.[14]  It is well established that "cost-conscious management is fundamental to

---

[14] Any assertion that only passive management is prudent would be at odds with plaintiff's counsel's position in other cases including *CommonSpirit*, where the plaintiff alleged that plan fiduciaries should have chosen the Fidelity Freedom Index Funds over their actively managed Fidelity counterparts because the active suite allegedly was too expensive and risky.  *See* Am. Compl. ¶¶ 19-20, 26-27, 32-34, *Smith v. CommonSpirit Health*, No. 2:20-cv-95, ECF No. 1 (E.D. Ky. July 2, 2020).

prudence in the investment function," *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197-98 (9th Cir. 2016) (quotation omitted), and ERISA does not require fiduciaries to chase returns to the exclusion of all other factors, including risk, *see, e.g.*, *Barchock*, 886 F.3d at 50-55; *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006); *Reetz*, 2021 WL 4771535, at *56.

As plaintiff's allegations demonstrate and courts have repeatedly held, active and passive funds "have different aims, different risks, and different potential rewards," and comparing them is "not a way to show that one is better or worse than the other."  *Davis*, 960 F.3d at 485; *see Johnson*, 2023 WL 8374525, at *7 (explaining "actively managed funds cannot, as a matter of law, serve as meaningful benchmarks to passively managed funds"); *Gonzalez*, 632 F. Supp. 3d at 165 ("Given the differences between active and passive funds, a simple comparison of fee-adjusted returns between an active and a passive fund has limited probative force."); *Parmer*, 518 F. Supp. 3d at 1303 ("Comparing funds with different investment strategies, such as passively managed and actively managed funds, are not meaningful benchmarks.").[15]  Indeed, the Sixth Circuit held in *CommonSpirit* that even a comparison between active and passive target date fund strategies offered by the *same provider* does not support a plausible inference of imprudence given the "distinct goals and distinct strategies" represented in the two approaches. *CommonSpirit*, 37 F.4th at 1167.  Plaintiff's proposed comparisons to the T. Rowe Price and American Funds TDFs fail for this additional reason.

### 3.    The S&P Target Date Indices Are Not A Meaningful Benchmark

In the amended complaint, plaintiff attempts to bolster her claims by adding allegations

---

[15] *See also, e.g.*, *Schave v. CentraCare Health Sys.*, 2023 WL 1071606, at *6 (D. Minn. Jan. 27, 2023); *Coyer v. Univar Sols. USA Inc.*, 2022 WL 4534791, at *6 (N.D. Ill. Sept. 28, 2022); *Davis v. Salesforce.com, Inc.*, 2021 WL 1428259, at *5 (N.D. Cal. Apr. 15, 2021), *aff'd in relevant part*, 2022 WL 1055557, at *2 n.1 (9th Cir. Apr. 8, 2022).

comparing the BlackRock TDFs' returns against the S&P Target Date Indices, but those allegations suffer from the same basic problem as plaintiff's comparison to the Alternative TDFs. As plaintiff alleges, the S&P Target Date Indices are "a composite" representing a "broad universe" of target date funds with "disparate strategies and styles." AC ¶ 44. This includes "TDFs with actively and passively managed underlying funds, TDFs with different risk profiles, and … [TDFs] with different asset allocations." *Id.* The very nature of the S&P Target Date Indices demonstrates that plaintiff has not alleged—and could not allege—that they have securities holdings, investment strategies, and risk profiles similar to the BlackRock TDFs, as is required to establish a meaningful benchmark. *See Matousek*, 51 F.4th at 281.

As the court held in rejecting the same proposed comparison in *Tullgren* and *Hall*, because "funds with distinct goals and distinct strategies are inapt comparators, there is no sound basis on which [to] compare the BlackRock TDFs with the S&P [Target Date] Index," which is merely an amalgam of funds with different goals and strategies than the BlackRock TDFs. *Tullgren*, 2023 WL 2307615, at *7; *Hall* 2023 WL 2333304, at *7 (same). Other courts have agreed and likewise rejected reliance on the S&P Target Date Indices as inadequate to plausibly allege that an individual target date fund suite "underperformed." *See, e.g.*, *Johnson*, 2023 WL 8374525, at *6; *Wehner*, 2021 WL 2417098, at *8.[16]

---

[16] For similar reasons, plaintiff's allegations about the BlackRock TDFs' Plan-asset-weighted Sharpe ratio percentile ranking among "Morningstar peer funds" (AC ¶ 58) do not rest on a meaningful benchmark. *See, e.g.*, *Matousek*, 51 F.4th at 281 (affirming dismissal of claims based on peer-group comparisons where complaint did not include allegations about whether alleged peer-group funds "hold similar securities, have similar investment strategies, and reflect a similar risk profile"); *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1151 (N.D. Cal. 2022) (dismissing claims and explaining Morningstar "peer group category" comparisons were "inappropriate benchmarks" for challenged target date fund strategy because the peer group is "an average of a large group of funds"), *appeal docketed*, No. 22-16268 (9th Cir. Aug. 22, 2022); *see also Locascio*, 2023 WL 320000, at *6 ("simply labeling funds as 'comparable' or 'a peer' is insufficient to establish that those funds are meaningful benchmarks"

Plaintiff's proposed comparison to the S&P Target Date Indices is all the more inappropriate because plaintiff relies on the version of the indices that embraces both "to retirement" and "through retirement" glide paths, even though there is a separate set of S&P Target Date *Style* Indices specifically geared toward "to retirement" funds like the BlackRock TDFs.  *See* AC ¶ 44 (citing S&P Target Date Indices and describing broad range of strategies they represent); Ex. H (S&P Dow Jones Indices, S&P Target Date Index Series Methodology (Oct. 2023)), at 3 (describing methodology underlying "S&P Target Date Indices" and "S&P Target Date Style Indices").[17]  Given the choice, plaintiff opted to rely on the set of S&P indices that is *less* closely aligned with the BlackRock TDFs' glide path strategy.  That approach runs counter to courts' repeated guidance about how to plead a meaningful benchmark.

> **4.    Sharpe Ratio Comparisons Across Funds With Distinct Strategies Are Not A Substitute For A Meaningful Benchmark**

Plaintiff's new Sharpe ratio allegations do not eliminate the problems with her inapt comparisons.  A Sharpe ratio is a measure of risk-adjusted returns.  *See* AC ¶¶ 54, 58-62.  As the court explained when dismissing similar BlackRock TDF claims in *Tullgren* and *Hall*, "Sharpe ratios are just another way to compare the performance returns of any two investments." *Tullgren*, 2023 WL 2307615, at *7 (quotation omitted); *Hall*, 2023 WL 2333304, at *6 (same).  They "are not magic wands that equalize any two investments as meaningful benchmarks," and "courts that have rejected TDF comparisons have done so not because the plaintiffs advanced the wrong metrics, but rather because the underlying investment strategies and styles were meaningfully different to start."  *Tullgren*, 2023 WL 2307615, at *7; *Hall*, 2023 WL 2333304, at

---

(quotation omitted)).

[17] The Court may properly consider S&P's explanation of the methodology underlying its Target Date Index Series because plaintiff expressly relies on that document in support of her allegations in the amended complaint.  *See* AC ¶ 44 n.15; *supra* at 5 n.3.

*7 (same).  Simply put, comparing Sharpe ratios is not a "substitute" for showing "two funds [are] comparable in the first place."  *Tullgren*, 2023 WL 2307615, at *7; *Hall*, 2023 WL 2333304, at *7 (same); *see Anderson*, 2021 WL 229235, at *7-8 (alleged underperformance based on absolute and risk-adjusted returns did not state a claim where plaintiffs failed to plead facts showing proposed comparators were "adequate benchmarks").  And for all of the reasons explained above, plaintiff has not established that any of the Alternative TDFs is an apt comparator to start with.

C.      **Plaintiff's Allegations Of "Underperformance" Fail On Their Own Terms**

Plaintiff's allegations also fail for yet another reason:  courts in the Second Circuit have repeatedly held that, even when measured against a "meaningful benchmark" (which plaintiff has not provided), "comparative underperformance must generally be 'consistent' and 'substantial' to support an inference of imprudence."  *Gonzalez*, 632 F. Supp. 3d at 163 (quoting *Patterson*, 2019 WL 4934834, at *10).  The amended complaint at most shows that the BlackRock TDFs delivered returns that were sometimes lower and sometimes higher than the Alternative TDFs and S&P Target Date Indices.  That performance record does not support a claim of imprudence under ERISA, as multiple courts evaluating substantially the same allegations about the BlackRock TDFs have concluded.  *See Abel*, 2024 WL 307489, at *5; *Antoine*, 2023 WL 6386005, at *11; *see also, e.g.*, *Patterson*, 2019 WL 4934834, at *13 (alleged "mixed performance" of challenged investments did not state a claim); *Dorman v. Charles Schwab Corp.*, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (dismissing claims where challenged funds "both underperformed and outperformed or matched at various times").

The amended complaint shows that, at a suite-wide level, the BlackRock TDFs have delivered strong returns compared to the two passive Alternative TDFs over periods capturing substantially all of the class period.  *See* AC ¶ 67 (pp. 46, 48).  Specifically, by the end of 2020,

the BlackRock TDFs' five-year trailing returns (reaching back to 2015, *before* the start of the class period in July 2016) were higher than those of the Vanguard TDFs.  *See* AC ¶ 67 (p. 48).  The BlackRock TDFs' five-year trailing returns remained higher than those of the Vanguard TDFs from that point forward.  *See id.*  Similarly, as of third quarter 2021, the BlackRock TDFs had suite-wide five-year trailing returns (going back to the first quarter in the class period) nearly identical to the Fidelity TDFs, with the BlackRock TDFs trailing by less than 0.10 percent.  AC ¶ 67 (p. 46).  By the next quarter, the BlackRock TDFs' five-year trailing returns were higher than those of the Fidelity TDFs.  *Id.*[18]  The BlackRock TDFs' performance compared to the S&P Target Date Indices within the class period was also unexceptionable:  starting in late 2018 and in each quarter thereafter, several vintages of the BlackRock TDFs outperformed their respective S&P Target Date Indices based on three-year trailing returns (reaching back to late 2015, before the start of the class period).  *See* AC ¶ 62 (pp. 38-40).

The performance of the BlackRock TDFs within the six-year class period is particularly noteworthy because much of plaintiff's alleged performance data reflects returns attributable in part to a glide path the BlackRock TDFs did not use in the period relevant to this lawsuit.  As noted above, in 2014, BlackRock changed its glide path to incorporate more equity early on.  *See supra* at 20.  Performance attributable to the prior glide path thus would have been captured in the BlackRock TDFs' five-year trailing returns as late as 2019.  Returns reflecting performance generated by multiple different glide path strategies have little bearing on the reasonableness of the Committee's decision to retain funds using the revised glide path during the relevant period,

---

[18] While the BlackRock TDFs' suite-wide three- and five-year returns were generally lower than the actively managed American Funds and T. Rowe Price TDFs during the class period, the difference in returns narrowed over time, with the BlackRock TDFs' three- and five-year returns trailing the American Funds and T. Rowe Price TDFs by less than one percent—and in many instances less than 0.5 percent—later in the class period.  *See* AC ¶ 67 (pp. 45, 47).

even if one assumes that the fiduciaries should have been motivated by historical performance alone when making investment decisions.

In any event, the amended complaint reflects neither consistent nor substantial "underperformance" relative to the Alternative TDFs and S&P Target Date Indices.  As an initial matter, plaintiff skews the overall performance picture for the BlackRock TDFs by leaving out of her performance comparison charts the "Retirement" vintage, designed for investors at or beyond their target retirement date.  As plaintiff acknowledges, the Retirement vintage of the BlackRock TDFs "regularly generated better trailing returns than the two [Alternative] TDFs that also offer a Retirement vintage (Fidelity Freedom Index and Vanguard Target Retirement)."  AC ¶ 53 n.21. Plaintiff tries to sweep aside this strong performance record, but the Retirement vintage is part of the package selected by the Committee, and Plan participants had $394 million invested in the Retirement vintage as of December 31, 2022—more than was invested in several of the other BlackRock TDFs.  *See* Ex. B (2022 Plan Form 5500), Sched. H, Line 4i.  The substantial returns generated by the Retirement vintage for participants in retirement cannot be ignored in evaluating the Committee's decision to retain the BlackRock TDF suite as a whole.

The amended complaint alleges that the trailing returns of other vintages of the BlackRock TDFs were sometimes outpaced by the Alternative TDFs and S&P Target Date Indices.  *See* AC ¶¶ 59-62.  Even where individual BlackRock TDFs had lower three- or five-year returns than the Alternative TDFs at a given point in time, the differences in returns were modest, with the BlackRock TDFs trailing the nearest Alternative TDF by as little as 0.01 percent and rarely over one percent.  *See id.*  Notably, the gap between the BlackRock TDFs and the nearest Alternative TDF was generally much smaller than the difference between the

Alternative TDFs with the lowest and highest returns for a given period.  *See id.*[19]  The margins

of alleged "underperformance" compared to the S&P Target Date Indices are similarly modest—

as little as 0.02 percent and a maximum of 1.46 percent for one vintage in one quarter.  *See id.*

Courts have held that even larger differences in returns are not "substantial" enough to plausibly

suggest that any prudent fiduciary would have removed the fund.  *See Antoine*, 2023 WL

6386005, at *11 (dismissing BlackRock TDF claim and noting greatest margin of alleged

underperformance was "around 2.5 percent" and courts "have rejected claims based on similar or

even more drastic underperformance metrics"); *Gonzalez*, 632 F. Supp. 3d at 164 (differences of

0.32 to 2.57 percent did not reflect "substantial underperformance"); *Cho v. Prudential Ins. Co.

of Am.*, 2021 WL 4438186, at *9 (D.N.J. Sept. 27, 2021) (dismissing claim based on alleged

underperformance ranging from 1.19 to 2.86 percent).

 Plaintiff's Sharpe ratio allegations likewise fail to plausibly suggest substantial, sustained

underperformance.  Plaintiff does not provide any actual Sharpe ratio values in her comparisons,

making it impossible "to determine how significant or insignificant" the alleged differences

between the BlackRock TDFs and Alternative TDFs are.  *Tullgren*, 2023 WL 2307615, at *7 n.5;

*Hall*, 2023 WL 2333304, at *7 n.6.  The amended complaint does show that there were several

quarters in which some vintages of the BlackRock TDFs had a higher Sharpe ratio—*i.e.*, better

risk-adjusted returns—than one or more of the Alternative TDFs.  *See* AC ¶¶ 59 (pp. 30-32), 60

(pp. 33-35), 62 (pp. 37-38, 40-41).  As of the third quarter of 2016, for example, none of the

BlackRock TDFs were ranked fifth based on five-year Sharpe ratio.  *See* AC ¶ 59 (p. 30).  And

many of plaintiff's Sharpe ratio peer-group percentile rankings place the BlackRock TDFs in the

---

[19] For example, in the first quarterly trailing returns comparison in the amended complaint, the 2020 vintage of the BlackRock TDFs trailed the Fidelity TDFs by only 0.02 percent, while the gap between the Fidelity and American Funds TDFs was 2.03 percent.  *See* AC ¶ 59 (p. 29).

middle of the pack, only slightly below the median.  *See, e.g.*, AC ¶ 62 (p. 37) (as of the third

quarter of 2018, the BlackRock TDF suite's three-year Plan-asset weighted Sharpe ratio ranked

in 54th percentile); *id.* ¶ 62 (p. 40) (as of the third quarter of 2019, "suite's five-year Plan-asset

weighted Sharpe ratio ranked in the 55th percentile").[20]  Even setting aside the substantial

strategic differences that confound comparisons across different target date strategies, allegations

showing essentially "average" performance on some measures in some periods lend no support

to a claim for breach of the duty of prudence.  *See, e.g.*, *Laboy*, 513 F. App'x at 80 n.3

(allegations placing challenged fund in 61st percentile compared to peer group reflected

performance "near the middle of the pack" and undercut allegations that fund underperformed

compared to a smaller, cherry-picked set of funds).

The amended complaint does not allege "persistent" underperformance on any other

metric, either.  *Gonzalez*, 632 F. Supp. 3d at 163.  Its performance allegations rest principally on

trailing three- and five-year returns over a narrow window from the second quarter of 2016

through the third quarter of 2019.  Because different target date funds by design will perform

somewhat differently in different market conditions, it is inevitable that any fund will at times

"underperform" others.  But as market conditions change, so do the "top-performing" funds.

Indeed, unlike the amended complaint, plaintiff's original complaint included vintage-by-vintage

quarterly trailing returns data through the second quarter of 2022.  *See* ECF No. 1 ("Compl.")

¶ 41 (pp. 22-26).  That data showed many instances later in the class period where the

BlackRock TDFs had higher trailing returns than one or more of the Alternative TDFs.  *See id.*

By mid-2022, none of the BlackRock TDFs was ranked fifth based on three-year returns, and

---

[20] The amended complaint conspicuously stops including allegations about the BlackRock
TDFs' three-year Plan-weighted Sharpe ratio percentile rankings beginning in the first quarter of
2019.  *See* AC ¶ 62 (pp. 39-40).

four were ranked in the top two.  *See* Compl. ¶ 41 (p. 26).  At the same point, four of the

BlackRock TDFs ranked second based on their five-year returns.  *See* Compl. ¶¶ 39, 41 (p. 26).[21]

As courts have recognized, the BlackRock TDFs' "significantly improved performance"

compared to the Alternative TDFs "cut[s] against an inference of imprudence."  *Bracalente*,

2023 WL 5184138, at *4; *see Abel*, 2024 WL 307489, at *5 (noting "the BlackRock TDFs

appear to have been on somewhat of an upswing … toward the end of the class period").  And it

vividly illustrates why it is important for fiduciaries to "factor long-term outcomes into the

investment calculus for retirement funds meant to be managed over decades."  *Abel*, 2024 WL

307489, at *5.  Plaintiff cannot avoid that fundamental point simply by removing from her

complaint the more detailed quarterly performance data from later in the class period, and in any

event the suite-wide performance graphs retained in the amended complaint include performance

through the second quarter of 2022 and illustrate the same pattern.  *See* AC ¶ 67; *supra* at 26-27.

It is precisely because relative returns often change over time that courts have commonly

rejected reliance on snapshots of three- and five-year returns as inadequate to support a claim of

imprudence.  *See, e.g.*, *Abel*, 2024 WL 307489, at *5 (dismissing BlackRock TDF claims and

explaining allegations based on "a select group of three- and five-year trailing averages" did not

plausibly suggest a breach); *see also Laboy*, 513 F. App'x at 80; *Gonzalez*, 632 F. Supp. 3d at

163; *Cho*, 2021 WL 4438186, at *9; *Wehner*, 2021 WL 507599, at *9; *Davis v. Salesforce.com,

Inc.*, 2020 WL 5893405, at *4 (N.D. Cal. Oct. 5, 2020).[22]  Fiduciaries have discretion to retain

---

[21] The actual performance data included in plaintiff's prior complaint belies her unsupported assertion that the BlackRock TDFs experienced only "insubstantial," "modest improvements" in performance relative to the Alternative TDFs later in the class period.  AC ¶ 64.

[22] Although the IPS's criteria for automatic inclusion on the watch list were based on performance over one-, three-, and five-year trailing periods, *see* AC ¶ 24, 42, 53 n.20, that does not mean that returns over those periods are enough on their own to plausibly suggest removal was required.  Even for funds that were placed on the watch list (which the BlackRock TDFs

investments through performance fluctuations in view of long-range considerations, *Falberg v. Goldman Sachs Grp. Inc.*, 2024 WL 619297, at *2 (2d Cir. Feb. 14, 2024); *Jenkins*, 444 F.3d at 925-26; *Gonzalez*, 632 F. Supp. 3d at 163, and are not required to engage in counter-productive returns-chasing by "reflexively jettison[ing] investment options in favor of the prior year's top performers," *Patterson*, 2019 WL 4934834, at *11.  Withdrawing from an investment strategy to invest in an alternative based purely on its higher short-term returns "is one of the surest ways to frustrate the long-term growth of a retirement plan."  *CommonSpirit*, 37 F.4th at 1166.  Hasty shifts in strategy are particularly misguided with respect to target date funds, which are designed to "offer a long-term investment strategy."  Ex. C (U.S. Dep't of Labor, Target Date Retirement Funds – Tips for ERISA Plan Fiduciaries) at 1.

The Committee's decision to stay the course with the low cost, highly rated, and hugely popular BlackRock TDFs through periods when their returns were not quite as high as some other strategies is well within the range of reasonableness and does not raise any inference of imprudence.  *See Hughes*, 595 U.S. at 177; *see also, e.g.*, *Abel*, 2024 WL 307489, at *6.

### D.      Plaintiff Cannot Save Her Claim By Misrepresenting The Requirements Of The Plan's IPS

Confronted with decisions in eight other cases dismissing BlackRock TDF claims virtually identical to those here, the amended complaint attempts to restyle plaintiff's claim as one based on the Committee's purported failure to "apply its own enumerated evaluative criteria" when monitoring the BlackRock TDFs.  AC ¶ 39 (emphasis removed).  The amended complaint and the IPS on which it relies show that these conclusory allegations have no

---

never were, *see* AC ¶ 50), the IPS did not require the Committee to remove any fund simply because it was included on the watch list or based on any other performance measure.  *See* AC ¶ 24 (alleging only that IPS provides the Committee "latitude" to remove funds based on performance); *see also* Ex. A (IPS) at 5-8 (Committee has "sole discretion" to remove funds from watch list or Plan menu).

substance.  Plaintiff alleges that for "the entirety of the pertinent period, the IPS identified the BlackRock custom benchmark as the sole benchmark against which the performance of the TDFs was to be measured," and "the quarterly review materials furnished to the Committee contained only this data."  AC ¶ 41; *see id.* ¶ 39 ("[T]he quarterly reports provided to the Committee compare the performance of the BlackRock TDFs to the BlackRock custom benchmark.").  The amended complaint also notes that the Committee's meeting minutes consistently reported that "the BlackRock TDFs generally performed in line with their custom benchmarks."  *Id.* ¶ 56.  Taken together, plaintiff alleges that the Committee monitored the BlackRock TDFs using the benchmark identified in the IPS, and that the data the Committee reviewed raised no concern.  It is nonsensical for plaintiff to claim that the Committee somehow violated the IPS by doing exactly what the IPS said to do.

The amended complaint repeatedly suggests that the IPS required the Committee to monitor the BlackRock TDFs' performance compared to "peer" funds, *see* AC ¶¶ 24, 42, 44, 46, 55-56, 59, 61, 64, 70-71, but these vague assertions are difficult to square with the allegation that the IPS identified the custom benchmark as the "sole benchmark against which the performance of the TDFs was to be measured," *id.* ¶ 41.  They are also defeated by the documents on which the amended complaint relies.  The IPS specifies that "ongoing monitoring" of Plan investment options "will include" only review of "performance relative to the established Benchmark," Ex. A (IPS) at 5—for the BlackRock TDFs, the custom benchmark, AC ¶ 41; *see* Ex. A (IPS) at 10. While ongoing monitoring *could* incorporate other factors at the Committee's discretion, the IPS did not require the Committee to look at peer comparisons or any other performance metric.  *See* Ex. A (IPS) at 5-6.  The IPS mentions performance relative to peers only as a consideration to be taken into account, as applicable, in the separate semi-annual fund and manager review process.

*Id.* at 7-8.  Where, as here, "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control."  *Owolabi v. Bank of Am., NA*, 2019 WL 463849, at *2 (S.D.N.Y. Feb. 6, 2019) (quotation marks omitted).  Plaintiff cannot plausibly allege that the Committee violated the IPS by misrepresenting what the IPS says.[23]

Plaintiff's true complaint is not about whether the Committee adhered to the IPS when monitoring the BlackRock TDFs—it unquestionably did—but about the terms of the IPS itself. Plaintiff protests that the custom benchmark identified in the IPS is not "meaningful," AC ¶¶ 39-40, because it "reflects the funds' asset allocation shifts over time" and thus "only evaluates BlackRock's implementation of its asset allocation strategy" to show whether the funds are "functioning as intended," *id.* ¶ 40.  As discussed above and as courts have repeatedly explained, that is exactly what a "meaningful benchmark" is supposed to do—mirror a fund's holdings, investment strategy, and risk profile.  *See, e.g.*, *Matousek*, 51 F.4th at 281; *see also* Ex. C (U.S. Dept't of Labor, Target Date Retirement Funds – Tips for ERISA Plan Fiduciaries) at 2 (instructing fiduciaries to monitor whether target date fund's "manager is … effectively carrying out the fund's stated investment strategy").  At the same time, courts have repeatedly concluded that the comparators plaintiff alleges should have been used instead—the S&P Target Date

---

[23] Although the IPS did not require the Committee to look at peer performance comparisons in its quarterly monitoring process, the Committee was provided information about the BlackRock TDFs' performance relative to other target date funds at multiple points through the class period, as the amended complaint concedes.  *See* AC ¶¶ 60 (p. 35), 62 (p. 38) (referencing 2018 and 2019 reports from investment consultant Callan); *see also id.* ¶¶ 50 n.17, 59 (p. 31) (referencing June 2017 presentation).  Plaintiff asserts that the meeting minutes show the Committee did not consider this information, AC ¶¶ 55, 59-60 (pp. 31, 34-35), 62 (p. 38), but the documents themselves contradict those allegations.  The meeting minutes directly reference peer-relative performance and reflect the consistent observation that the BlackRock TDFs had performed well and in line with expectations relative to both their custom benchmarks and peer funds.  Ex. I (June 15, 2017 Meeting Minutes) at 4-5; Ex. J (Mar. 19, 2018 Meeting Minutes) at 1-2; Ex. K (Mar. 22, 2019 Meeting Minutes) at 1-2.  These materials reflect the Committee's continued conviction in the BlackRock TDF strategy—not blindness to it.

Indices and alternative funds with distinct investment strategies and risk profiles—are *not* "meaningful benchmarks" for the BlackRock TDFs.  *See Abel*, 2024 WL 307489, at *5 (collecting cases); *see also supra* at 18-25.[24]

Stripped of its self-contradictory allegations about the IPS, plaintiff's claim remains what it has always been—a claim that the fiduciary process *must* have been flawed because the Committee decided to retain the BlackRock TDFs through periods when their returns were not quite as high as some other strategies.  *See generally* AC ¶¶ 53-71; *see also id.* ¶ 38 n.13 (asserting that even though the Committee's process "exhibited some markers of procedural prudence," plaintiff has nonetheless stated a claim because the retention of the BlackRock TDFs "cannot satisfy substantive prudence").[25]  Courts have rejected nearly identical allegations as insufficient to plausibly allege a breach of fiduciary duty, and for all of the reasons explained above, the same result follows here.

**E.      The Amended Complaint Does Not Plead A Claim For Breach Of The Duty Of Loyalty Or Duty To Follow Plan Documents**

The amended complaint asserts in passing that the Plan's fiduciaries breached not only ERISA's duty of prudence, but also the duty of loyalty and duty to act "in accordance with the documents and instruments governing the Plan."  AC ¶ 92; *see also id.* ¶ 29 (referencing duty of

---

[24] Plaintiff alleges that the custom benchmark was inadequate because the BlackRock TDFs were unlikely to trigger automatic inclusion on the watch list using that benchmark, such that it was "not possible for the BlackRock TDFs to be earmarked for further investigation under the parameters established in the IPS."  AC ¶ 41.  The fact that the BlackRock TDFs delivered on their stated strategy is not a sign of a flawed monitoring process; if the BlackRock TDFs had not performed as expected, they would have been flagged for the watch list like any other funds.  Moreover, the IPS gave the Committee broad discretion to include funds on the watch list even if they did not satisfy the criteria for automatic inclusion.  *See* Ex. A (IPS) at 5-6.

[25] Plaintiff's inability to muster any genuine allegations of a flawed oversight process is telling given that the amended complaint was filed after plaintiff was provided documents reflecting the Committee's monitoring of Plan investments, including a full set of Committee meeting minutes and materials.

loyalty).  However, the amended complaint does not support a claim for breach of either of these distinct fiduciary obligations, and any such claims should therefore be dismissed.

To state a claim for breach of ERISA's duty of loyalty, "a plaintiff must do more than allege that a defendant failed to act for the exclusive purpose of providing benefits to participants." *Ferguson*, 2019 WL 4466714, at *4.  Specifically, "a plaintiff must allege plausible facts supporting an inference that the defendant acted for the purpose of providing benefits to itself or someone else." *Id.*  Plaintiff, however, supplies no factual allegations at all in support of a disloyalty claim.  Allegations of disloyalty that "merely ride the coattails" of a prudence claim do not state a claim for breach of the duty of loyalty.  *Id.*; *see, e.g.*, *Rosen v. Prudential Ret. Ins. & Annuity Co.*, 718 F. App'x 3, 7 (2d Cir. 2017); *Anderson*, 2023 WL 3976411, at *2–3; *Hall*, 2023 WL 2333304, at *7; *Locascio*, 2023 WL 320000, at *6.

Plaintiff's conclusory claim for breach of the duty to follow plan documents is also inadequately alleged.  The amended complaint does not identify any provision of any Plan document that plaintiff contends was violated, nor plead facts showing what the Plan fiduciaries purportedly did to run afoul of the specific provision.  *See, e.g.*, *Anderson*, 2023 WL 3976411, at *4 (dismissing claim based on similarly conclusory allegations); *Hall*, 2023 WL 2333304, at *7 (same); *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth*, 475 F. Supp. 3d 910, 943 (E.D. Wis. 2020) (dismissing claim where plaintiff "did not identify specific provisions in the plan documents that he believe[d] [defendants] did not follow").  To the extent plaintiff intends to ground her claim in an alleged violation of the IPS—despite failing to clearly identify any term of the IPS the Committee purportedly did not follow—any such claim fails because, even assuming an IPS is a binding plan document, *but see Tussey v. ABB, Inc.*, 746 F.3d 327, 334 n.5 (8th Cir. 2014) (expressing doubt about that proposition), plaintiff has not plausibly

alleged that the Committee in any way failed to comply with the IPS.  *See supra* at 32-35.

## II.    Plaintiff's Claims For Failure To Monitor Fiduciary Appointees And Co-Fiduciary Liability Also Fail

Count II alleges that the fiduciaries responsible for appointing members of the Committee

failed to prudently carry out their monitoring duties and are liable as co-fiduciaries for breaches

allegedly committed by the Committee.  These claims are derivative of plaintiff's primary breach

of fiduciary duty claim in Count I and therefore must be dismissed along with it.  *See, e.g.*,

*Antoine*, 2023 WL 6386005, at *11; *Gonzalez*, 632 F. Supp. 3d at 169; *Patterson*, 2019 WL

4934834, at *15; *In re Nokia Erisa Litig.*, 2011 WL 7310321, at *6 (S.D.N.Y. Sept. 6, 2011).[26]

Even if plaintiff's fiduciary breach claim survived, her failure to monitor claim is also

deficient because she fails to allege, as she must, facts plausibly suggesting that the appointing

fiduciaries did not "review the performance of [their] appointees at reasonable intervals in such a

manner as may be reasonably expected to ensure compliance with the terms of the plan and

statutory standards."  *In re Calpine Corp. ERISA Litig.*, 2005 WL 1431506, at *6 (N.D. Cal.

Mar. 31, 2005); *see* 29 C.F.R. § 2509.75-8, FR-17.  Rather than allege any facts about the

appointing fiduciaries' monitoring process, the amended complaint asks the Court to infer a

failure to monitor based solely on the retention of the BlackRock TDFs in the Plan menu.  *See*

AC ¶ 101.  But even if plaintiff had plausibly alleged a breach by the Committee (and she has

not), the amended complaint provides no basis to infer that any prudent *appointing fiduciary*

would have suspected the Committee was not fulfilling its duties simply because the BlackRock

---

[26] Plaintiff also vaguely refers to potential liability for failure "to monitor other fiduciaries of the Plan in the performance of their duties" in Count I.  AC ¶ 92.  To the extent plaintiff intends to assert a claim for breach of that duty by any Plan fiduciary other than the appointing fiduciaries, that claim would fail as a matter of law because "ERISA's duty to monitor applies only to a person or entity that has the power to appoint and remove an ERISA fiduciary."  *Fish v. Greatbanc Tr. Co.*, 2016 WL 5923448, at *49 (N.D. Ill. Sept. 1, 2016).

TDFs remained in the Plan menu.  *Cf. In re Reliant Energy ERISA Litig.*, 336 F. Supp. 2d 646, 657 n.13 (S.D. Tex. 2004) ("The duty to monitor … does not give rise to overarching liability for the [appointees'] investment decisions.").

Plaintiff's attempt to hold the appointing fiduciaries liable under ERISA's co-fiduciary liability provision, 29 U.S.C. § 1105(a), is also inadequately alleged.  The amended complaint simply parrots the statutory requirements without pointing to any factual allegations that support its conclusory assertions.  *See* AC ¶ 104.  Such threadbare allegations do not state a claim.  *See Iqbal*, 556 U.S. at 678; *see also Radcliffe v. Aetna, Inc.*, 2021 WL 4477408, at *15 (D. Conn. Sept. 30, 2021); *Rosen*, 2016 WL 7494320, at *16.[27]

## III.  The Amended Complaint Does Not State A Claim For Knowing Breach Of Trust

In Count III, plaintiff asserts an alternative claim for "knowing breach of trust" based on non-fiduciary participation in a breach.  *See* AC ¶¶ 105-07.  Like Count II, this claim automatically fails given plaintiff's failure to plausibly allege an underlying breach of fiduciary duty.  *See, e.g., Antoine*, 2023 WL 6386005, at *11; *Gonzalez*, 632 F. Supp. 3d at 169, at *12; *Radcliffe*, 2021 WL 4477408, at *16.

Plaintiff's alternative "knowing breach of trust" claim also fails because she does not plead facts supporting any non-fiduciary's knowledge of the purported breach.  *See* AC ¶ 107; *Coyer*, 2022 WL 4534791, at *7 (dismissing claim and noting "plaintiffs have not plausibly pleaded allegations of knowledge"); *Cho*, 2021 WL 4438186, at *14 (noting absence of allegations that defendants "acted with the requisite knowledge" in dismissing claim).

Moreover, plaintiff fails to plead facts supporting an entitlement to the exclusively

---

[27] Plaintiff's assertion in Count I that, to the extent any fiduciary "did not directly commit" the breaches of duty alleged there, they "at the very minimum" are liable for those breaches as a co-fiduciary, AC ¶ 93, has no more substance and fails for the same reason.

equitable relief sought on this claim.  *See* AC ¶ 106.  There is no basis to infer that there are any funds or property in Citi's possession that rightfully belong to the Plan, as would be necessary to support a claim for equitable restitution or disgorgement.  *See, e.g.*, *Moreno v. Deutsche Bank Americas Holding Corp.*, 2016 WL 5957307, at *9 (S.D.N.Y. Oct. 13, 2016) (dismissing claim where plaintiffs did not "allege facts sufficient to meet the traceability requirement" for "equitable restitution").  And as a *former* Citi employee and *former* participant in the Plan, AC ¶ 9, plaintiff lacks Article III standing to sue for forward-looking injunctive relief.  *See, e.g.*, *Beldock*, 2023 WL 1798171, at *5; *Coyer*, 2022 WL 4534791, at *4; *Marks v. Trader Joe's Co.*, 2020 WL 2504333, at *9 (C.D. Cal. Apr. 24, 2020); *see also Davis v. FEC*, 554 U.S. 724, 734 (2008) ("a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought" (quotation marks omitted)).

## IV.  Plaintiff Lacks Article III Standing To Assert Claims Regarding Any Plan Investment Option Other Than The BlackRock 2045 Fund

Finally, in addition to the plausibility issues discussed above that require dismissal under Rule 12(b)(6), plaintiff also lacks Article III standing to bring her claims as to all but one of the funds at issue in the amended complaint.  Although plaintiff purports to broadly challenge the entire BlackRock TDF suite, plaintiff invested only in the BlackRock 2045 Fund.  AC ¶ 9.

In a defined contribution plan, "[t]he value of a Plan participant's individual retirement account is a function of his or her contributions and investment decisions; if a participant does not choose to invest in a particular offering, any change in the value of that financial product has no impact on the participant's account."  *Patterson*, 2019 WL 4934834, at *4.  A participant in a defined contribution plan therefore cannot have suffered an injury related to any funds in which she did not personally invest.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992) (explaining that a constitutionally sufficient injury in fact must "affect the plaintiff in a personal

39

and individual way").  And "even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quotation marks omitted); *see Patterson*, 2019 WL 4934834, at *5.

Courts in this Circuit and beyond have accordingly dismissed for lack of Article III standing claims related to funds in which a plaintiff did personally not invest.  *See, e.g.*, *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015); *Patterson*, 2019 WL 4934834 at *5; *In re Meridian Funds Grp. Sec. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 917 F. Supp. 2d 231, 235 (S.D.N.Y. 2013); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006); *see also, e.g.*, *Locascio*, 2023 WL 320000, at *3.  Because plaintiff could not have been injured by funds in which she never invested, her claims must be dismissed on standing grounds to the extent they challenge any fund other than the BlackRock 2045 Fund.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the amended complaint with prejudice.

Dated:    March 1, 2024

Respectfully submitted,

*/s/ Meaghan VerGow*
Meaghan VerGow (*pro hac vice*)
Deanna M. Rice (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington D.C. 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
Email: mvergow@omm.com
           drice@omm.com

James T. Shearin (ct 01326)
PULLMAN & COMLEY LLC
850 Main Street
Bridgeport, CT 06601

Telephone: (203) 330-2240
Facsimile: (203) 576-8888
Email: jtshearin@pullcom.com

*Attorneys for Defendant Citigroup Inc.*